Jose Musa, Bar No. 2411128
Ken Ciccoli, Bar. No. 2211118
Inlet Law, LLC
818 Smoky Bay Way, PMB 324,
Homer, AK 99603
(907) 299-6572
Info@inlet-law.com
Attorneys for Nicholas Conner

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NICHOLAS CONNER<br><br>Plaintiff,<br><br>v.<br><br>KENAI PENINSULA BOROUGH;<br><br>MAYOR PETER MICCICHE,<br><br>Defendants. | Case No. _____ -SLG |

## COMPLAINT
(U.S. CONST. ART. 1 § 10, CL. 1; U.S. CONST. AMEND I; U.S. CONST. AMEND XIV, § 1;
42 U.S.C. § 1983)

Plaintiff, Mr. Nicholas Conner ("Mr. Conner") files this complaint against

the above-named defendants for violation of his constitutional right to film public

officials in public spaces, and to ask that this Court void Kenai Peninsula Borough

("KPB") ordinance 2024-07 (the "Ordinance") as unconstitutional.

## JURISDICTION AND VENUE

1.  Mr. Conner is an American citizen and domiciled resident of the State of Alaska, residing in Soldotna, Kenai Peninsula Borough, Alaska.

2.  Defendant Kenai Peninsula Borough ("KPB") is a governing body organized and existing pursuant to the Constitution of the State of Alaska.

3.  Mayor Peter Micciche ("Defendant Mayor") is the Mayor of KPB and is sued in his official capacity. Mayor Micciche acts as administrative authority of KPB and supervises the enforcement of municipal law and carries out the directives of KPB.

4.  This Court has jurisdiction of Plaintiff's claims under 28 U.S.C. § 1331.

5.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), and 1391(c).

## CONSTITUTIONAL AND STATUTORY FRAMEWORK

I.      U.S. CONST. ART. 1 § 10 CL. 1

"No State shall . . . pass any Bill of Attainder."[1] A bill of attainder legislatively determines guilt and inflicts punishment upon an identifiable

---

[1] U.S. CONST. ART. 1 § 10 CL. 1.

Case 3:25-cv-00054    Document 1    Filed 03/19/25    Page 2 of 27

individual without provision of the protections of a judicial trial."[2]  In judging the constitutionality of [an ordinance, this Court] may only look to its terms, to the intent expressed by Members [] who voted its passage, and to the existence or nonexistence of legitimate explanations for its apparent effect."[3]

II.    U.S. CONST. AMEND I

"Congress shall make no law . . . abridging the freedom of speech, or of the press."[4] "The First Amendment protects the right to photograph and record matters of public interest"[5] This includes "the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interests."[6]

> As the Supreme Court has observed, the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw. It is ... well established that the Constitution protects the right to receive

---

[2] Fresno Rifle and Pistol Club, Inc. v. Van de Kamp, 965 F.2d 723, 727 (9th Cir. 1992)(quoting *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 484 (1977)).

[3] *SeaRiver Maritime Financial Holdings v. Mineta,* 309 F. 3d 662, 669 (9th Cir. 2002)(quoting *Nixon v. Administrator of Gen. Servs.,* 433 U.S. 425, 468 (1977).

[4] U.S. CONST. AMEND I.

[5] *See Askins v. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018).

[6] *Id*.

Case 3:25-cv-00054    Document 1    Filed 03/19/25    Page 3 of 27

information and ideas. An important corollary to this interest in protecting the stock of public information is that there is an undoubted right to gather news from any source by means within the law.[7]

The filming of government officials engaged in their duties in a public place

. . . fits comfortably within these principles.[8] Such

> [o]verbroad laws "may deter or `chill' constitutionally protected speech," and if would-be speakers remain silent, society will lose their contributions to the "marketplace of ideas." To guard against those harms, the overbreadth doctrine allows a litigant (even an undeserving one) to vindicate the rights of the silenced, as well as society's broader interest in hearing them speak. If the challenger demonstrates that the statute "prohibits a substantial amount of protected speech" relative to its "plainly legitimate sweep," then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid.[9]

III.    U.S. Const. amend XIV § 1

"No state shall make or enforce any law which . . . deprive[s] any person of

life, liberty, or property, without due process of law."[10] As such, the vagueness

---

[7] *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) (*Internal citations omitted*).

[8] *Id*.

[9]  *United States v. Hansen*, 143 S. Ct. 1932, 1939-40 (2023) (*Internal citations omitted*).

[10] U.S. Const. amend XIV § 1

doctrine rests on the twin constitutional pillars of due process and separation of powers."[11] When an ordinance fails to provide even rudimentary notice of what it does and does not criminalize, the Court terms the ordinance vague,[12] and "[i]n our constitutional order, a vague law is no law at all.[13]

IV.    42 U.S.C. § 1983

> Every person who, under color of any . . . ordinance . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.[14]

"In evaluating a § 1983 claim against a municipality, a court must consider: '(1) whether plaintiff's harm was caused by a constitutional violation, and if so, (2) whether the city is responsible for that violation.'"[15]

---

[11] *U.S. v. Davis*, 139 S. Ct. 2319, 2321 (2019).

[12] *Dubin v. United State*, 599 US 110, 143 S. Ct. 1557, 1574 (2023).

[13] *US v. Davis*, 139 S. Ct. 2319, 2321 (2019).

[14] 42 U.S.C. § 1983

[15] *Trask v. Ketchikan*, 253 P.3d 616, 621 (2011) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992)).

6.  Mr. Conner lives on the Kenai Peninsula.

7.  Mr. Conner is a "First Amendment Auditor."

8.  First Amendment Auditors, like Mr. Conner, engage in journalism concerning First Amendment issues by filming and photographing government buildings, equipment, and officials.

9.  Plainly, First Amendment Auditors like Mr. Conner go into public spaces and record the happenings therein.

10. First Amendment Auditors like Mr. Conner then publish their work on various platforms.

11. Mr. Conner's actions have been, and remain, constitutionally protected.

12. Despite those constitutional protections, various public officials have reported Mr. Conner to law enforcement, attempting to halt the expression of Mr. Conner's constitutional rights.

13. On August 7, 2023, Mr. Conner and Defendant Mayor spoke over the phone about Mr. Conner's actions as a First Amendment Auditor. This call followed an incident where police officers threatened to arrest Mr. Conner. During the phone

Case 3:25-cv-00054    Document 1    Filed 03/19/25    Page 6 of 27

call Defendant Mayor agreed with Mr. Conner that First Amendment Auditing was a constitutionally protected action.

14. In fact, Defendant Mayor stated "the whole thing is so juvenile—so the girls get all worked up, and then [male employee] doesn't know what to do, he doesn't have any background in that. I would have walked out there any said 'Hey Guys, settle down—man's taking videos of our beautiful building, leave him alone, ya know? If he wants to take videos that's fine—anything else you wanna see? Because we don't have anything to hide. We're glad to have the public in here.'"

15. Defendant Mayor then recites a conversation he had with the police offer from the earlier arrest threat, stating "I've been talking to people [about] training. [And] you're right, I'm gonna train them. When someone comes into the building and wants to take a video, who cares?"

16. However, Defendant Mayor clarified his stance by following up with "[n]ow, I don't think our employees should be videotaped if they don't wanna be . . ."

17. Since that time, and over a year of interactions, many public officials have made threats to have Mr. Conner trespassed from public spaces. However, Mr.

Conner's First Amendment Auditing is constitutionally protected and cannot rise to the level of, or be considered, criminal trespass. Therefore, Mr. Conner has never been arrested for criminal trespass.

18. Because Mr. Conner's actions cannot be considered criminal, and because Defendants could not lawfully have Mr. Conner arrested, Defendants manufactured a work-around to keep Mr. Conner from visiting and filming public spaces.

19. The work around, KPB Ordinance 2024-07 ("the Ordinance") was proposed soon after.

20. The Ordinance is a "non-criminal" trespass ordinance which can be discretionarily enforced by the KPB Mayor to keep citizens off KPB property.

21. As explained by the KPB council member who introduced the Ordinance:

> [T]his [i]s a way for the Borough to put some tools in place for them to react to, uh, public that come into public spaces in the buildings and cause disruption, and this is uh, kind of uh, a stopgap between, right now, you know, you could file something for uh, criminal trespass, but

Case 3:25-cv-00054    Document 1    Filed 03/19/25    Page 8 of 27

that seems more . . . it seems overkill for what we're
looking really to be able to provide.[16]

22. Or, as KPB's attorney stated:

State law provides a general criminal trespass provision,
um, it provides for public—it's applicable to public or
private facilities where if the person in control or in
charge of the building asks somebody to leave, and they
don't, they can be charged with a crime of, uh criminal
trespass in the second degree, uh it doesn't spell out the
ability to provide any kind of temporal limits of saying
don't come back for 6 months, a year, ever, whatever the
case may be um that is a clear ability of private property
owners to do including businesses, uh, its trickier and
um, for public facilities to trespass for a time period and
so um since that's currently not in state law there's
nothing in title 29 or any of the code provisions under
title 11 or otherwise, and um, you know were looking at
this as when faced with such issues we don't really have
that mechanism to issue a trespass order under either
state law or borough code currently.[17]

23. In other words, KPB created the Ordinance because they could not arrest

Mr. Conner for visiting public spaces and needed to invent a legal chimera better

capable of infringing Mr. Conner's constitutional rights.

---

[16] NewsNow Alaska, *NewsNow Alaska is live! KPB meeting Seward Let's see what
corruption we can find*, YouTube (Apr. 16, 2024),
https://www.youtube.com/live/p62qYGgmcso.
[17] *Id.*

24. Or, as Defendant Mayor said on the day KPB enacted the Ordinance:

> I've been mayor for a little over a year right and um we
> have . . . 60,882 residents . . . When we've had difficult
> people, which we do all the time, it's what we do. It's
> what we do best, people come in upset about their
> valuation increases, their roads, the landfill not being
> open on Sunday, which it is now so we haven't gotten
> those calls in a while. Um, school stuff, people come in
> pretty upset, parents upset about things with their kids.
> [That's] not what we do, we send them across the hall to
> the other entity in the building, but we're really good at
> hearing them. It's okay if they're angry, certain
> departments at a certain time of the year have lots of
> angry people. We don't care if they're angry, we're going
> to deal with them if they're respectful, and they're not
> threatening. We've recently been sweet, kind, and as
> responsive as possible to certain individuals that are
> obsessed and its difficult . . . *but when behavior gets strange*,
> we need to have a softer way to deal with it. That's what
> this is about, and that's all this is about. *I would assume*
> *that of the 60,882 people, 60,881 of them will never be affected*
> *by these changes*. And we hope that all 60,882 are ones that
> never experience us getting to the point where we feel
> access to our building should be restricted for a time.[18]

---

[18] NewsNow Alaska, *NewsNow Alaska is live! KPB meeting Seward Let's see what*
*corruption we can find*, YouTube (Apr. 16, 2024),
https://www.youtube.com/live/p62qYGgmcso.

25. Following Defendant Mayor's comments, KPB enacted the Ordinance, a copy of which is attached hereto.[19]

26. As Defendant Mayor said, the Ordinance is intended to punish one individual out of 60,882. That individual is Mr. Conner.

27. In fact, the Ordinance is so overbroad and vaguely written that it allows Defendant Mayor to selectively enforce the Ordinance against Mr. Conner alone— even if other First Amendment Auditors step onto public property, Defendant Mayor could simply decide he likes them better and decline to enforce the Ordinance against them. Isolated and selective enforcement is precisely what occurred.

28. On January 10, 2025, Mr. Conner went to the KPB River Center to obtain and record educational information. Mr. Conner was denied entrance.

29. After leaving the River Center, police unlawfully detained Mr. Conner, not because they had reasonable articulable suspicion that a crime was afoot, rather, to investigate whether or not Mr. Conner had trespassed upon public land.

---

[19] Exhibit A, Ordinance 2024-07.

NICHOLAS CONNER V.
KENAI PENINSULA BOROUGH,
MAYOR PETER MICCICHE

COMPLAINT

CASE NO. _____-SLG

- PAGE 11 OF 27 -

30. Law enforcement articulated no suspicion that a crime had occurred or was being committed, but nonetheless detained Mr. Conner.

31. Mr. Conner has made a records request for the police report from this incident but has not received it.[20]

32. Defendant KPB demanded law enforcement sanction Mr. Conner with a criminal trespass for thirty days.[21] Mr. Conner requested written confirmation of a trespass order. Law enforcement officer Hahn explained that if Mr. Conner wanted a written trespass, that he would instead be arrested. Mr. Conner then asked if he was still detained, officer Hahn said no, and everyone left.

33. Defendants made no attempt to obtain an injunction against Mr. Conner. Defendants did not issue a formal trespass warning to Mr. Conner. Defendants did not seek any alternative measure of resolution against Mr. Conner.

34. That evening, Defendant Mayor issued a letter to Mr. Conner stating that

> [p]ursuant to [the Ordinance], as a result of your erratic, disconcerting, threatening, profane and aggressive behavior toward Borough staff and a pattern of conduct that significantly interferes with the orderly conduct of

---

[20] Exhibit B, Records Request.
[21] justobeyalaska, *trespass*, YouTube (Jan. 10, 2025), https://www.youtube.com/watch?v=1_jLNfYQ4zM.

KPB services escalated today when you attempted to forcibly gain entry into the River Center, I am hereby issuing this written trespass order notifying that you that are trespassed from entering, including the parking lot areas and grounds of **all** Kenai Peninsula Borough owned, operated, or leased facilities for a period of twelve (12) months.[22]

35. Defendant Mayor's description of events that day (notably absent of specific detail) paints an inaccurate picture of Mr. Conner. Had the above-referenced event been worthy of all the adjectives Defendant Mayor gave it, then a criminal trespass order should have ensued. However, Mr. Conner's actions are entirely lawful, so no criminal trespass was issued. Instead, the damages to Mr. Conner caused by Defendants' constitutional work-around far outweigh the effects of criminal trespass.

36. In issuing the above, Defendants have foreclosed Mr. Conner's use and enjoyment of quite literally hundreds of places. For example, Mr. Conner is presently not allowed to go in or near any hospital on the peninsula. Mr. Conner may not use services at the airport. Mr. Conner may not sign up for or participate in any educational courses in the local community colleges. Mr. Conner cannot

---

[22] Exhibit C, Trespass Order (*Emphasis retained*).

visit his grandchildren at their schools. Mr. Conner cannot go to his local post-office, or library. Defendants have even taken Mr. Conner's ability to cast an in-person vote as most polling places are owned or operated by KPB.

37. And now, the City of Soldotna, inspired by Defendants' unconstitutional acts, are also attempting to extra-judiciously limit Mr. Conner's access to City owned properties.[23]

38. Mr. Conner prays this Court deem these infringements unconstitutional.

COUNT I
**BILL OF ATTAINDER**

39. Mr. Conner repeats and realleges each and every allegation contained above as if set forth herein.

40. The bill of attainder levied against Mr. Conner legislatively determined his guilt and inflicts punishment upon him without provision of the protections of a judicial trial. The Ordinance's terms, the expressed intent of those who voted its passage, and to the nonexistence of legitimate explanations for its devastating effects against Mr. Conner make the Ordinance unconstitutional.

---

[23] Exhibit D, Letter from Janette Bower, Soldotna City Mgr., to Nick Conner, Pl. (Jan. 1, 2025).

41. Mr. Conner's constitutional actions have been met by Defendants with an unconstitutional response, depriving Mr. Conner of even his most fundamental rights.

42. That Mr. Conner is not personally named in the Ordinance is of no consequence. A statute need not identify an individual or group by name to incur suspicion.[24] The "singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons."[25]

43. Further, Plaintiff is referenced by omission as Defendant Mayor addressed KPB's Council prior to the unanimous passage of the Ordinance when he stated that out of the 60,882 citizens of the Borough, 60,881 would be unaffected by the Ordinance.

---

[24] *Seariver Maritime Financial Holdings, Inc. v. Mineta,* 309 F.3d 662, 669-70, (citing *Atonio v. Wards Cove Packing Co.,* 10 F.3d 1485, 1490 (9th Cir. 1993)).
[25] *Id.* at 670, (citing *Selective Serv. Sys.,* 468 U.S. at 847, 104 S.Ct. 3348 (quoting *Communist Party,* 367 U.S. at 86, 81 S.Ct. 1357).

Case 3:25-cv-00054    Document 1    Filed 03/19/25    Page 15 of 27

44. The Ordinance violates the prohibition against Bills of Attainder US Const. Art. I § 10, cl. 11.

45. Because the Ordinance displays the traditional brand of a bill of attainder: that the statute (1) specifies the affected persons, and (2) inflicts punishment (3) without a judicial trial, Mr. Conner prays this Court strike the Ordinance as an unconstitutional bill of attainder.

## COUNT II
## VIOLATIONS OF THE RIGHT TO FREE SPEECH AND PRESS

46. Mr. Conner repeats and realleges each and every allegation contained above as if set forth herein.

47. "Congress shall make no law . . . abridging the freedom of speech, or of the press."[26] "The First Amendment protects the right to photograph and record matters of public interest"[27] This includes "the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interests."[28]

_____

[26] U.S. CONST. AMEND I.
[27] *See Askins v. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018).
[28] *Id.*

Case 3:25-cv-00054    Document 1    Filed 03/19/25    Page 16 of 27

48. As applies here, Mr. Conner has a constitutionally protected right to gather news from any source by means within the laws. At no point have Defendants accused Mr. Conner of operating outside of the law—rather, they attempt to restrict his rights while he operates within it.

49. The process of creating pure speech is entitled to the same First Amendment protection as the product of that process. This includes the right to record [government] officers engaged in the exercise of their official duties in public places.[29]

50. The filming of government officials engaged in their duties in a public place fits comfortably within First Amendment principles.

51. Content-based restrictions on speech are subject to strict scrutiny and may only be upheld if they are "the least restrictive means available to further a compelling government interest. Reasonable, content-neutral, time, place, or manner restrictions are permitted in public fora so long as

---

[29] *Id*. (Quoting *Fordyce* , 55 F.3d at 439 ; see also , e.g. , ACLU of Ill. v. Alvarez , 679 F.3d 583, 597 (7th Cir. 2012) ; Glik v. Cunniffe , 655 F.3d 78, 82 (1st Cir. 2011) (recognizing "that the First Amendment protects the filming of government officials in public spaces").

Case 3:25-cv-00054    Document 1    Filed 03/19/25    Page 17 of 27

they are "narrowly tailored to serve a significant governmental interest," "leave open ample alternative channels for communication of the information," and do "not delegate overly broad licensing discretion to a government official."[30]

52. The content-based restriction of Mr. Conner's First Amendment Auditing is owed review under the principles of strict-scrutiny. But, even if the Ordinance is deemed content-neutral, Defendants' restrictions do not leave open ample alternative channels for communication of the information, and worse, they provide Defendant Mayor unfettered discretion over the Ordinance's application. For these reasons, the Ordinance constitutes a prior restraint which violates Mr. Conner's First Amendment rights.

53. Alternatively, the First Amendment protects against overbroad laws which deter or chill constitutionally-protected speech, as if would-be speakers remain silent, society will lose their contributions to the

---

[30] Askins v. Dep't of Homeland Sec., 899 F.3d 1035, 1044 (9th Cir. 2018) (*Internal citations omitted*).

NICHOLAS CONNER V.
KENAI PENINSULA BOROUGH,
MAYOR PETER MICCICHE

COMPLAINT

CASE NO. _____-SLG

- PAGE 18 OF 27 -

"marketplace of ideas." To guard against those harms, the overbreadth doctrine allows a litigant . . . to vindicate the rights of the silenced, as well as society's broader interest in hearing them speak. If the challenger demonstrates that the statute "prohibits a substantial amount of protected speech" relative to its "plainly legitimate sweep," then society's interest in free expression outweighs its interest in the statute's lawful applications, and this Court must hold the Ordinance facially invalid.[31]

54. The Ordinance seeks to withhold Mr. Conner's right to record and publish, and Defendants sought to accomplish this without intervention of the court. In doing so, Defendants silence Mr. Conner and starve him of his constitutional rights to free speech and press.

55. Mr. Conner prays this Court strike the Ordinance and thereby reinstate his constitutional freedoms.

---

[31] *United States v. Hansen*, 143 S. Ct. 1932, 1939-40 (2023) (*Internal citations omitted*).

56. Mr. Conner repeats and realleges each and every allegation contained above as if set forth herein.

57. By enacting the Ordinance, Defendants denied Mr. Conner his right to due process of law.

58. "No state shall make or enforce any law which . . . deprive[s] any person of life, liberty, or property, without due process of law."[32]

59. This Ordinance fails to provide even a rudimentary notice of what it does and does not criminalize—as seemingly Mr. Conner can no longer take a ride in an ambulance to the hospital.

60. The Ordinance plainly provides Defendant Mayor the discretion to arbitrarily revoke any citizen's constitutional rights simply by providing a verbal or written, and then subsequent written order of no trespass. As the Ordinance states:

> A person is prohibited from knowingly entering or remaining in, on, or across any real property, building or other facility or structure owned or controlled by the

---

[32] U.S. CONST. AMEND XIV

NICHOLAS CONNER V.     COMPLAINT     CASE NO. _____-SLG
KENAI PENINSULA BOROUGH,
MAYOR PETER MICCICHE

- PAGE 20 OF 27 -

Case 3:25-cv-00054  Document 1  Filed 03/19/25  Page 20 of 27

borough, after having been ordered by the mayor or
employee or official having control over the facility not
to enter or remain on such property, either by posting on
the premises or upon receipt of a written or oral order.

61. This means Mr. Conner, having received a written order from

Defendant Mayor, is not only restrained from going to the hospital, but he

cannot even pass through the parking lot to shout for help.

62. While Defendants may aver this was never the intent of the

Ordinance, this is indeed what the Ordinance does. As such, this Court must

deem this Ordinance vague and unconstitutional because "[i]n our

constitutional order, a vague law is no law at all."

63. Mr. Conner prays this Court declare the Ordinance as failing the

requirements of due process by finding the Ordinance unconstitutionally

vague.

Count IV
**Violation of 42 USC § 1983**

64. Mr. Conner repeats and realleges each and every allegation contained

above as if set forth herein.

65. Every person who, under color of any . . . ordinance . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

66. "In evaluating a § 1983 claim against a municipality, a court must consider: '(1) whether plaintiff's harm was caused by a constitutional violation, and if so, (2) whether the city is responsible for that violation.'"

67. Defendants have taken various strategic steps to revoke Mr. Conner's constitutional rights. They do so under the color of an Ordinance which offered them vehicle to selectively harm Mr. Conner. Defendants made liberal use of this invented power and now Mr. Conner's daily activities, in many aspects, are harmed beyond easy comprehension.

68. Mr. Conner's harms result from the unconstitutional Ordinance. KPB and its Mayor are responsible.

69. Therefore, Mr. Conner prays relief be made in equity, to compensate Mr. Conner for the loss of his rights, and that relief be made by finding the Ordinance unconstitutional as arbitrarily applied.

## PRAYERS FOR RELIEF

70. Mr. Conner repeats and realleges each and every allegation contained above as if set forth herein.

71. Mr. Conner prays for the following:

    a.  Injunctive Relief

    b.  A declaration that KPB's Ordinance 2024-07 is an unlawful bill of attainder.

    c.  A declaration that KPB's Ordinance 2024-07 is unconstitutional under the First Amendment.

    d.  A declaration that KPB's Ordinance 2024-07 violates Mr. Conner's right to due process.

    e.  An Order permanently enjoining the application of Ordinance 2024-07.

f.  An Order awarding Mr. Conner all costs, attorney's fees, and statutory fees from prosecuting this action.

g.  Any relief this Court deems just and proper under the circumstances.

DATED: March 18, 2025

INLET LAW, LLC
Attorneys for Nicholas Conner

/s/ Jose Musa
Jose Musa
Alaska Bar No. 2411128

/s/ Ken Ciccoli
Ken Ciccoli
Alaska Bar No. 2211118

NICHOLAS CONNER V.
KENAI PENINSULA BOROUGH,
MAYOR PETER MICCICHE

COMPLAINT

CASE NO. _____-SLG

- PAGE 24 OF 27 -

Case 3:25-cv-00054    Document 1    Filed 03/19/25    Page 24 of 27

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury, comprised of the maximum number of jurors permitted by law, on all issues triable of right by jury.

DATED: March 18, 2025

INLET LAW, LLC
Attorneys for Nicholas Conner

/s/ Jose Musa
Jose Musa
Alaska Bar No. 2411128

/s/ Ken Ciccoli
Ken Ciccoli
Alaska Bar No. 2211118

# CERTIFICATE OF COMPLIANCE WITH LENGTH LIMIT AND TYPEFACE AND TYPE-STYLE REQUIREMENTS

In accordance with Local Civil Rule 7.4, this *Complaint*, excluding the sections identified in Local Civil Rule 7.4(a)(4), contains 4,007 words.

This *Complaint* complies with the typeface and type-style requirements of Local Civil Rule 7.5 as it is typed in 13-point Palatino Linotype font.

DATED: March 18, 2025

INLET LAW, LLC
Attorneys for Nicholas Conner

/s/ Jose Musa
Jose Musa
Alaska Bar No. 2411128

/s/ Ken Ciccoli
Ken Ciccoli
Alaska Bar No. 2211118

NICHOLAS CONNER V.
KENAI PENINSULA BOROUGH,
MAYOR PETER MICCICHE

COMPLAINT

CASE NO. _____-SLG

- PAGE 26 OF 27 -

Case 3:25-cv-00054     Document 1     Filed 03/19/25     Page 26 of 27

<u>**CERTIFICATE OF SERVICE**</u>

I filed a true and correct copy of the foregoing on all parties. This document was served electronically through the Court's CM/ECF System.

DATED: March 18, 2025                    INLET LAW, LLC
                                         Attorneys for Nicholas Conner

                                         /s/ Jose Musa
                                         Jose Musa
                                         Alaska Bar No. 2411128

                                         /s/ Ken Ciccoli
                                         Ken Ciccoli
                                         Alaska Bar No. 2211118